THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ARTHUR P. JACOBY, Appellant.

Argued January 24, 1952; decided April 17, 1952.

*Ransom Pratt* for appellant. Lacking a sworn information of the charge against defendant, the City Court was without jurisdiction to render judgment convicting defendant of violation of section 43 of the Penal Law and to impose sentence thereon. (*People ex rel. Baker* v. *Beatty,* 39 Hun 476; *People* v. *Ostrosky,* 95 Misc. 104; *People* v. *James,* 11 App. Div. 609; *People* v. *Mortefogolio,* 56 N. Y. S. 2d 496; *People* v. *Sledge,* 192 Misc. 934; *People* v. *Patrick,* 175 Misc. 997; *People* v. *Stevens,* 190 Misc. 441; *People* v. *Grogan,* 260 N. Y. 138; *People* v. *Belcher,* 302 N. Y. 529; *People* v. *Bertram,* 302 N. Y. 526; *People* v. *Wallens,* 297 N. Y. 57.)

*Harry K. Morton, District Attorney,* for respondent. I. There is a substantive law violation. (*People* v. *Tylcoff,* 212 N. Y. 197.) II. No written information is required by statute and none is necessary. (*People* v. *Gade,* 6 N. Y. S. 2d 1018; *People* v. *Burns,* 19 Misc. 680; *People* v. *Carter,* 88 Hun 304; *People ex rel. Rose* v. *Addition,* 189 Misc. 102.) III. The plea

of guilty and conviction thereon should stand. (*People* v. *Radaha,* 69 N. Y. S. 2d 722; *People* v. *Dennis,* 132 Misc. 410.)

CONWAY, J. This is an appeal from an order of affirmance of the County Court of Steuben County affirming a judgment of conviction of the Corning City Court.

The Corning City Court was established by chapter 142 of the Laws of 1905. By section 90 of the act the court was given jurisdiction in criminal proceedings with power to hold Courts of Special Sessions. It was also given the additional power and jurisdiction '' in the first instance to hear, try and determine all charges for misdemeanors * * *.'' As to this latter additional jurisdiction conferred by the Legislature, there were no special provisions concerning complaints, informations or summary hearings of misdemeanor charges.

There is nothing in the record to indicate that the City Court Judge sat as a Court of Special Sessions although appellant's brief is based upon the theory that he did. The return of the Judge recited: '' No information was filed but attached hereto is a sworn statement of the defendant which was filed with the Court at that time.'' It also recited '' That on July 13 [14], 1950, at a regular term of Corning City Court, Arthur P. Jacoby was brought before your deponent, as such Judge, by Officer Howard Cole, and was charged with violation of Section 43 of the Penal Law.'' It would appear, therefore, that the City Court Judge acted under the jurisdiction granted him by the Legislature to try the defendant '' in the first instance '' for a misdemeanor.

In any event the defendant, nineteen years of age, appeared voluntarily before the City Court Judge on July 14, 1950, with an affidavit which he had composed, typed and sworn to before a notary public. It reads as follows:

'' July 14, 1950.

State of New York,
County of Steuben,   ss:
City of Corning,

I, Arthur Phillippe Jacoby, being duly sworn, deposes and says. I have been told that I did not make this statement unless I wish to do so and that I know that whatever I say may be used against me in a criminal action.

I further state that I make the following statement of my own free will and without any threats being used against me and without any promises being made to me.

I am 19 years of age and single and reside in Parkville, Mo. I am working at Corning Glass Works.

On June 28, 1950, at about 2:30 P.M. I was driving through the streets of Corning. I saw two girls on the campus of Northside High School playing tennis and, while in the car, let down my pants. After a short time I drove on. I then went home. At about 11:25 P.M. on July 9, 1950, I was again driving around in my car when I saw two girls on Dodge Avenue and I, for the purpose of having a little excitement, nothing else, decided to scare them. I approached them, pretending that it was a hold-up but they ran away. I then left.

I can never remember having done anything such as this before. I think that it was caused more by a desire for excitement or urge to see if I could get away with something I had never done before than anything else.

I have typed the foregoing statement in the presence of Officer Howard Cole and I swear that it is all true to the best of my knowledge. I know what it means to swear to a statement and I know that swearing to a false statement makes me guilty of an additional crime.

signed,

A. PHILLIPPE JACOBY

Subscribed and sworn to before me
 this 14 day of July, 1950.
  CHARLES E. HAUSE
   Notary Public, No. 51-(illegible)
State of New York, Steuben County
My Commission Expires March 31, 1952.''

Thereupon, as the return discloses, more than an hour was spent by the court, representatives of the police department, city attorney, the defendant, his father and his clergyman in discussing the proper charge to be made against the defendant. After this lengthy discussion, participated in by defendant, the conclusion was reached that he should be charged with a violation of section 43 of the Penal Law, as the return continues, " rather than some other section of the Penal Law such as

exposure of private parts of a person. This was done to protect the defendant as far as possible because of his youth.''

Whatever may have been the reason for the selection of section 43 of the Penal Law, it would appear to have been a wise selection, for it is a catch-all section which, insofar as here applicable, reads as follows:

'' § 43. *Penalty for acts for which no punishment is expressly prescribed.*

'' A person who wilfully and wrongfully commits any act which seriously injures the person or property of another, or which seriously disturbs or endangers the public peace or health, or which openly outrages public decency, for which no other punishment is expressly prescribed by this chapter, is guilty of a misdemeanor * * *.''

The acts of the defendant as designated and described by him were clearly wilful and wrongful in the language of section 43. It could be argued that, implicit in the defendant's confession of wrongdoing, was a violation of section 1140 of the Penal Law as well as an attempt to commit assault in the second degree under subdivision 5 of section 242 of the Penal Law, if not indeed the commission of attempted robbery in the third degree under section 2128 of the Penal Law. On the other hand it may be argued that the confession did not include all of the elements necessary to charge the commission of those crimes. However, as we have seen, after consideration of the facts by the City Court Judge, the city attorney, the defendant, his father and clergyman, a decision was made by the City Court Judge that section 43 of the Penal Law had been violated by an act '' which openly outrages public decency * * *.'' As the return discloses it was only '' then that the arrest was formally made and entered upon the Police and Court records. * * * [B]efore the defendant was allowed to plead guilty he was duly informed of all his rights including his right to be represented by counsel, his right to have a trial, either by the Court or by a jury, at his election, the right to be released on bail and have the case adjourn[ed] until he obtained counsel, his right to apply to a Court of Record to have the matter transferred to County Court. He was also advised of the possible penalty involved and of the fact that a conviction after a plea of guilty amounts to the same thing as a conviction after trial.''

Thereupon the defendant pleaded guilty to "the offense of Disorderly Conduct Sect. 43 of the Penal Law". The words "Disorderly Conduct" are surplusage to be disregarded in view of the record.

It is now urged upon us that the City Court of Corning had no jurisdiction of the subject matter because no proper information had been filed and that is the sole question — of jurisdiction — which is presented to us.

We shall assume that whether or not the City Court Judge of Corning sat as a Court of Special Sessions, an information was required. By statute, in the city of New York an information must be signed by the District Attorney. (Code Crim. Pro., § 742.) There is no such requirement for Steuben County. Indeed, as correctly conceded in appellant's brief, "There appears to be no explicit constitutional or statutory provision stating in so many words that there must be sworn, written information setting forth the charge against defendant in all cases of which the Special Sessions has, in the first instance exclusive jurisdiction." Our court, however, has declared the common law as to informations so that defendants accused of crime may be properly protected. Such declaration, of course, is apart from and does not affect the general common law that jurisdiction in a proper case may be obtained and conferred by consent or waiver or by appearance and participation in proceedings before the court.

We have very recently in *People* v. *Schultz* (301 N. Y. 495, 497), in an appeal from Special Sessions in Orange County, where the same statutory rules are applicable as in the city of Corning, pointed out what an information should contain, after quoting with approval from *People* v. *Zambounis* (251 N. Y. 94, 96) which we repeat in part: " ' The defendant should be informed of the nature of the charge against him and of the act constituting it, not only to enable him to prepare for trial, but also to prevent him from again being tried for the same offense.' " It cannot be said that that was not scrupulously done here nor that the two reasons given any longer exist. The defendant himself was permitted to depose to his own statement of the nature of the charge which should be made against him and of the act or acts constituting it and finally, after participation in conference and plea of guilt, to designate the Penal Law section violated. We had occasion to say substantially the same in

*People* v. *Belcher* (302 N. Y. 529, 535, FULD, J.) as in *People* v. *Schultz* (*supra*) when discussing an information serving the function of a pleading *following a lawful arrest as here*: " Since, then, the information was based upon requisite ' legal evidence ', pointing the commission of the crime and defendant's probable guilt * * * no further deposition was called for and the officer was not required to particularize the evidence on which he relied * * *."

In *People* v. *Brous* (296 N. Y. 1028), we had before us an information which stated legal conclusions only, without allegations of fact, and which was made by one who had not seen the defendant at the premises on the day of the claimed commission of a violation of section 986 of the Penal Law in the county of Nassau. There having been there, as here, a lawful arrest and no objection made to the form of the information upon arraignment and before trial, we decided that the defendant had waived objection to it and that the court had jurisdiction both of the defendant and the subject matter. We affirmed the judgment of conviction.

But it is said that an information must be signed and sworn to and put in writing by someone other than the defendant himself; that while a defendant would naturally know more about what he did than a policeman or lay witness, form must be observed for defendant's protection and no affidavit detailing his acts by a prospective defendant alone may be " termed " an information so that he may confer jurisdiction of the subject matter upon the court though the defendant stand before it and confer jurisdiction of his person. It is true as said by the continental jurist, Jhering, as translated and approved by Sir Frederick Pollock (The Genius of the Common Law, p. 21) : " Form is the sworn foe of caprice, she is Freedom's twin sister " (see address of Chief Judge CULLEN before Brooklyn Bar Association, January, 1913, upon his retirement from the Court of Appeals) but we have never so exalted form that in the act of so doing it has been necessary to put aside reason and substance. Where justice and reasonableness pointed the way we have not hesitated to treat a paper, which was of particular form, as that which it was in truth and substance, in determining even our constitutional jurisdiction and thus bringing ourselves to the merits of a situation. (*Matter of Huxley,*

294 N. Y. 146, 148; *Matter of Bunting,* 288 N. Y. 388, 393.)
Similarly we have held that it is not necessary for an indictment
or an information to allege violation of a section of the Penal
Law by section number and that it is not necessary to allege a
violation of the Penal Law by a recital of the name of the crime
since that was an irregularity which was waived by the defend-
ant when he pleaded guilty. (*People ex rel. Childs* v. *Knott,*
187 App. Div. 604, 613, affd. 228 N. Y. 608; *People* v. *Dwyer,* 160
App. Div. 542, 547, affd. 215 N. Y. 46; *People* v. *Adler,* 174 App.
Div. 301, 303; *People ex rel. Kondrk* v. *Foster,* 299 N. Y. 329;
*People ex rel. Carr* v. *Martin,* 286 N. Y. 27, 32.) So here we
treat the defendant's affidavit as the information on this
unusual record.

Finally, it should be said that it is urged upon us that in
*People* v. *Grogan* (260 N. Y. 138, 142) and in *People* v. *Zam-
bounis* (251 N. Y. 94, 96, *supra*) it was said that the information
must state the crime charged against the accused and that here
the crime with which the defendant was charged was not named.
That statement in those two cases was common law as declared
by us in cases where it was applicable. Both cases were ones in
which it was possible to name the crimes constituting violations
of the particular sections involved. Here, as we have seen from
section 43 of the Penal Law as quoted (*supra*), that was not pos-
sible. The section had no appropriate heading or title. It was
a catch-all section. The Legislature when it undertook in section
742 of the Code of Criminal Procedure to provide for the con-
tents and form of an information in a Court of Special Sessions
in the city of New York provided for just such a case. It pro-
vided that the name of the crime, if it had one, should be
inserted in the information, but that if the crime had no general
name that then there be inserted a brief description of it as
given by statute. If that method was applicable when the form
and contents of the information were provided for, it is even
more apt when no provision at all has been made. It was done
here (1) by the careful description of defendant's acts as com-
posed by him and then (2) by his participation in the selection
of the Penal Law misdemeanor section which he had violated
by such acts, and (3) his plea of guilty thereto. That was more
than sufficient.

The judgment should be affirmed.

DESMOND, J. (concurring). This appeal should be dismissed, but I concur for affirmance, since the result of affirmance and dismissal is the same. Defendant has no standing here since, not only by his plea of guilty but by his every act and utterance, he knowingly, deliberately and in his own interest waived all of the objections he now asserts. He surrendered himself to the police, he made a free, frank, sworn confession and he was fully informed by the Judge as to his rights to counsel and to trial. Then, after full consideration and on the advice of his father and his clergyman, he pleaded guilty to the misdemeanor charge of violating section 43 of the Penal Law, and was given a suspended sentence.

No appeal lies from a criminal judgment entered on a plea of guilty unless the sentencing court lacked jurisdiction either of the subject matter of the crime adjudged, or of the person of the defendant. The City Judge of Corning has, by express statute, subject-matter jurisdiction over misdemeanors (see L. 1905, ch. 142, § 90). He acquired jurisdiction over the person of this defendant when the latter, by voluntarily appearing and pleading guilty, waived the filing of a written complaint or information. As was noted years ago (*People* v. *Bell,* 31 N. Y. Crim. Rep. 370), our Criminal Code nowhere says in so many words that a written information must be filed in misdemeanor cases (and there is nothing to that effect in the Corning City Court Act, *supra*). Perhaps that requirement may be inferred from such statutory language as that of section 699 of the Code of Criminal Procedure, mandating that " the charge against the defendant must be distinctly read to him ". Certainly, there has developed in the decisions an assumption, which should not be rejected at this late day, that a defendant is entitled to be confronted with a written charge. However, it by no means follows that he cannot waive such a writing. *People* v. *Carter* (88 Hun 304, 306) held, in 1895, that a plea of guilty amounts to such a waiver, and that case has been frequently followed, and never overruled (see *People* v. *Burns,* 19 Misc. 680, 682; *People* v. *Park,* 92 Misc. 369, 376).

That such a waiver is valid can hardly be doubted. It is traditional New York law that a defendant may waive anything except the court's jurisdiction over the subject matter of the crime, unless such a waiver is prohibited by the Constitution, or

by a statute or by a strong public policy (*Pierson* v. *People,* 79 N. Y. 424, 429; *People* v. *Rathbun,* 21 Wend. 509, 542; *People* v. *Wiechers,* 179 N. Y. 459, 464; *People ex rel. Prince* v. *Brophy,* 273 N. Y. 90, 97). Even as to an indictment, the only reason a waiver thereof is not valid and effective is that the State Constitution (art. I, § 6) expressly deprives the court of jurisdiction over a felony unless there be an indictment found by a grand jury (*People ex rel. Battista* v. *Christian,* 249 N. Y. 314, 318, 319; see *Commonwealth* v. *Dailey,* 66 Mass. 80, 82, 83; *Schick* v. *United States,* 195 U. S. 65). There is, of course, no such constitutional or statutory bar to the waiver of an information, and, at least in cases like this one, no reason for setting up a public policy against it. It is hard to see why a defendant, by pleading guilty, may effectively waive the all-important rights of trial, confrontation of witnesses, etc., but cannot waive what would, in this case, be the merest formality, that is, the presentation to him of a formal written accusation. The purposes of such an information (see *People* v. *Schultz,* 301 N. Y. 495; *People* v. *Belcher,* 302 N. Y. 529, 534) are two: first, to inform defendant of the charge against him, a piece of information which this defendant obviously had; and second, to prevent him from being tried again for the same offense, a protection accomplished here by the filing with the court of defendant's own detailed confession. If we are to obey the commands of sections 684 and 764 of the code that we disregard pure formalities and nonprejudicial omissions, we must, I think, let this judgment stand.

I pass over without discussion, as quite irrelevant, two groups of cases: first, those where the question was as to the sufficiency of the information to support a warrant of arrest (*People* v. *Bertram,* 302 N. Y. 526), and, second, those where the statement of facts in a written information did not allege a crime at all (*People* v. *Grogan,* 260 N. Y. 138). I omit, also, as unnecessary, any consideration of whether defendant's written confession could be treated as the information here (it was not, apparently, so treated in the City Court). The only question here is as to whether this defendant could, and did, waive the filing of a written information. I think he could, and did.

The judgment should be affirmed.

FULD, J. (dissenting). Without any formal information or complaint having been filed against him, and indeed without any charge of any kind specifying acts sufficient to constitute a crime, defendant, a youth of nineteen, unrepresented by counsel, was convicted in the City Court of Corning upon his plea of guilty to the crime of violating section 43 of the Penal Law.

Filed with the City Court was a statement — sworn to before a notary — which defendant had made shortly before to the police and in which he asserted that he had done certain acts on two different days. The return of the city judge who had presided over the court, explicitly reciting that "No information was filed", establishes not only that the statement was not treated as an information, but that it was following its submission and after a discussion before the court that defendant was charged orally with a violation of section 43. It was at that point that "the arrest was formally made and entered upon the Police and Court records." There is no showing in the return, however, that the oral charge was supplemented by any information or complaint in writing, or by any specification whatever — oral or in writing — of the acts charged against defendant.

We all seem to be agreed that prosecution for a misdemeanor can proceed only upon a written information designating the offense charged and setting out the acts allegedly committed by the defendant constituting that offense — and, indeed, there can be no doubt of that proposition. However, Judge CONWAY, writing for affirmance (*supra*, p. 40), asserts that defendant's self-accusatory statement may be treated as the essential information, while Judge DESMOND, in his opinion (*supra*, p. 41), urges that the necessity for such an information was waived by defendant's act of pleading guilty. I cannot agree with either hypothesis. As to the first, defendant's statement was not regarded, and could not be regarded, as the information demanded by law. As to the second, compliance with the basic elements of an information is a jurisdictional requirement which cannot be waived or dispensed with by a plea of guilty.

Section 145 of the Code of Criminal Procedure defines an information as "the allegation made to a magistrate, that a person has been guilty of some designated crime." Implicit in that definition, as this court long ago observed, is the requirement that the allegation be presented in writing and under oath.

(See *People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383, 389.)
Section 699 of the Code, applicable generally to misdemeanor
prosecutions in courts of special sessions outside the city of
New York, provides that the defendant, upon arraignment, must
be informed " of the charge against him " and of his right to
counsel, and that " the charge * * * must be *distinctly
read* to him, and he must be required to plead thereto ". As
was pointed out in an early decision of the General Term, the
obvious inference from the direction that the charge be read to
the defendant, is that the charge — that is the " allegation " of
section 145 — cannot be an oral one, but must necessarily be
in writing. (See *People ex rel. Baker* v. *Beatty,* 39 Hun 476,
477.)

" Real notice of the true nature of the charge " against the
defendant in a criminal case has been described as " the first
and most universally recognized requirement of due process ".
(*Smith* v. *O'Grady,* 312 U. S. 329, 334.) In that regard, the
courts have scrupulously insisted that " a person may not be
punished for a crime without a formal and sufficient accusation
even if he voluntarily submits to the jurisdiction of the court."
(*Albrecht* v. *United States,* 273 U. S. 1, 8; see, also, *Weeks* v.
*United States,* 216 F. 292, 293 [C. A. 2d], cert. den. 235 U. S.
697; Clark, Handbook of Criminal Procedure [1895], p. 104.)
In our own court, we have similarly enforced the requirement,
in misdemeanor prosecutions both in the Court of Special Ses-
sions of the City of New York (*People* v. *Zambounis,* 251 N. Y.
94, 97) and in courts of special sessions outside of New York
City (*People* v. *Grogan,* 260 N. Y. 138, 142), that the prosecu-
tion must be based upon an information which states the offense
charged and sets out " the acts constituting the crime with the
same clarity as an indictment ". In requiring the same exact-
ness in this regard in an information as in an indictment, we
necessarily assumed that the information would have the same
formal embodiment in a writing as an indictment. (Cf. *People*
v. *Grogan, supra,* 260 N. Y. 138, 142.)

Indeed, these formal requirements have their roots in the
common law of England. From the earliest times in England
an information charging a misdemeanor had to be in writing.
There were two kinds of such informations: in one category,
informations filed by the Attorney-General, generally for

offenses more immediately against the king or the public safety; in the other, informations filed by an official known as the Master of the Crown Office, through whom, for the most part, prosecutions at the suit of private complainants were initiated. (See *Weeks* v. *United States, supra,* 216 F. 292, cert. den. 235 U. S. 697; 1 Bishop, New Criminal Procedure [4th ed., 1895], p. 427; Clark, Handbook of Criminal Procedure, *op. cit.,* pp. 128–129.) Restrictions were at an early date imposed upon the presentation of informations by the Master of the Crown Office. (4 & 5 Will. & Mary, ch. 18.) In essence, however, there were certain fundamental requisites common to both types of prosecutions. In each case, the information had to be a writing " filed of record," and defendant was entitled to the same notice as in the case of an indictment. (See Blackstone, Commentaries on the Law [Gavit ed., 1941], bk. 4, ch. 23, pp. 880–881.) Hawkins (Pleas of the Crown, bk. 2, ch. 26, § 4), in discussing the form of an information, wrote that " an INFORMATION differs from an INDICTMENT in little more than this, that the one is found by the oaths of twelve men, and the other is not so found, but is only the allegation of the officer who exhibits it, whatsoever certainty is requisite in an indictment, the same at least is necessary also in an information, and consequently, as all the material parts of the crime must be precisely found in the one, so must they be precisely alleged in the other, and not by way of argument or recital."

Though there may perhaps be warrant for greater informality in the case of prosecutions for offenses below the grade of misdemeanors (cf. *People* v. *Grogan, supra,* 260 N. Y. 138, 141; *Reg.* v. *Millard,* 6 Cox C. C. 150), similar relaxation of standards cannot be sanctioned where, as in this case, " we are dealing with a misdemeanor tried before a Court of Special Sessions * * * a crime, not one of those minor offenses dealt with summarily by magistrates." (*People* v. *Grogan, supra,* 260 N. Y. 138, 141–142.)

Some confusion has crept into the cases through the failure to distinguish between the matter of securing jurisdiction over the person of the defendant and the matter of proceeding with the prosecution after the defendant has been brought before the court. (Cf., e.g., *People* v. *Carter,* 88 Hun 304, 306.) Where a defendant is lawfully arrested without a warrant, or other-

wise voluntarily submits himself to the jurisdiction of the court, that dispenses with any need for a written information or deposition as a predicate for the issuance of a warrant of arrest. The fact that the court has properly secured jurisdiction of the person of the defendant cannot, however, eliminate the requirement that "a formal and sufficient accusation" be lodged against him as the basis for proceeding with the prosecution. (See *Albrecht* v. *United States, supra,* 273 U. S. 1, 8.) As has been pointed out in the leading case of *Weeks* v. *United States* (*supra,* 216 F. 292, 293, cert. den. 235 U. S. 697), " A court can acquire no jurisdiction to try a person for a criminal offense unless he has been charged with the commission of the particular offense and charged in the particular form and mode required by law. If that is wanting, his trial and conviction is a nullity, for no person can be deprived of either life, liberty, or property without due process of law."

It is urged that defendant's statement to the police may itself be regarded as the requisite information in writing. As noted, however, the city court did not so view the statement. But, beyond that, I am unable to understand how a self-accusation can in any event constitute a " charge " in the legal sense, or, for that matter, in any other sense[1], for it is of the very essence of such charge that someone other than the accused — either a public officer or a private complainant — shall present the accusation to which the defendant must answer. It would be an anomaly in our " accusatorial " system of criminal law enforcement (see *Watts* v. *Indiana,* 338 U. S. 49, 54), to sanction prosecution on the basis of a self-accusatory statement by the defendant rather than a formal accusation proffered on behalf of the People. Any such extraordinary method of procedure could easily be productive of great abuse, with consequences prejudicial to the People as well as to an accused. It is noted in Stephen's History of the Criminal Law of England (Vol. 1, p. 244) that in England " since the Norman conquest * * * there have been * * * three modes of accusation, namely, appeal or accusation by a private person, indictment or accusation by a grand jury, and informations which are accusations either by the Attorney-General or by the Master

---

1. The word " charge " is defined in Webster's New International Dictionary (2d ed., 1948, p. 452), as " an accusation of a wrong or offense; allegation ".

of the Crown Office." The modes of prosecution in this state have been of an analogous order. It would mark an innovation in the law to sanction self-accusation as an additional mode of prosecution.

Lacking in the instant case, moreover, is, not only the formal accusation demanded by law, but any accusation whatever sufficient to show that any crime was committed. If the charge on which defendant has been convicted is to be taken to be the oral charge of violating section 43, it is clear that the record fails to show any specification of acts relied upon by the People as showing the commission of that crime. Just as in *People* v. *Zambounis (supra,* 251 N. Y. 94, 97), we held that an information in the Court of Special Sessions of the City of New York " cannot be supplemented or pieced out by the affidavits in the Magistrates' Court ", so in the instant case the oral charge of violation of section 43 could not be " supplemented or pieced out " by defendant's statement.

As regards that statement — even if it could be deemed the equivalent of an information — it falls short, and in two distinct respects, of what the law demands. For one thing, it fails to satisfy the basic requisite that an information charge the defendant with " some *designated* crime " (Code Crim. Pro., § 145). While that requirement may not make it necessary to specify by section number the statute on which the prosecution is predicated (see *People* v. *Dioquardo,* 303 N. Y. 514), it is essential that there be some definite identification of the particular crime of which the defendant is accused. (See *People ex rel. Sampson* v. *Dunning,* 113 App. Div. 35, 40; see, also, *People* v. *Zambounis, supra,* 251 N. Y. 94, 96; *People* v. *Grogan, supra,* 260 N. Y. 138, 142.) The merest examination of defendant's statement reveals that it does not charge that defendant is " ' guilty of some designated crime,' and this is a jurisdictional defect which may not be overlooked." (*People ex rel. Sampson* v. *Dunning, supra,* 113 App. Div. 35, 40; see, also, *People* v. *Grogan, supra,* 260 N. Y. 138, 142.) Only by a process of surmise can the statement be read as charging or identifying a particular crime, and it is significant that Judge CONWAY, in his opinion, suggests, not one, but several possible criminal charges (*supra,* p. 37).

The statement is inadequate to fulfill the function of an information for the further reason that it fails to show the commission of acts sufficient to spell out any crime at all. That defendant " let down " his " pants " while in his automobile, as recited in the statement, does not establish — without additional facts which do not appear in this record — that he " wilfully and lewdly " exposed his person, or that he did so in a public place or in the presence of others, in violation of section 1140 of the Penal Law. Nor is the additional recital in the statement that the defendant approached two girls while in his car, and " for the purpose of having a little excitement, nothing else " and " to scare them " pretended " that it was a hold-up ", sufficient, without more, to establish the crime either of attempted assault (Penal Law, § 242, subd. 5) or of attempted robbery (Penal Law, § 2128), as suggested in Judge CONWAY's opinion (*supra*, p. 37). The facts stated fall far short of alleging the commission of either crime; apart from other deficiencies, the requisite element of criminal intent is nowhere alleged. (See, e.g., *People* v. *Katz,* 290 N. Y. 361.)

Nor does the statement charge a violation of section 43. It asserts no acts which " seriously " injured the person or property of another, " seriously " disturbed or endangered " the public peace or health," or " openly " outraged " public decency," within the ambit of that provision. (Cf. *People* v. *Bruzzano,* 302 N. Y. 605; *People* v. *Corrigan,* 253 N. Y. 301; *People* v. *Tylkoff,* 212 N. Y. 197; *People* v. *Baylinson,* 211 App. Div. 40; *People* v. *McDermott,* 111 App. Div. 380.) What is more, by its terms the statute is applicable only where " no other punishment is expressly prescribed ", and, if the recitals in the statement could conceivably spell out a criminal offense, it would be one encompassed within some section other than section 43. (See, e.g., *People* v. *Bruzzano, supra,* 302 N. Y. 605.)

Clearly, then, the requisite information was lacking, and its absence constitutes a jurisdictional defect which cannot be cured or overcome by waiver or consent or by plea of guilty. As this court has declared, " waiver is not permitted where a question of jurisdiction or fundamental rights is involved and public injury would result. A privilege, merely personal, may be waived; a public fundamental right, the exercise of which is requisite to jurisdiction to try, condemn and punish, is binding

upon the individual and cannot be disregarded by him.'' (*People ex rel. Battista* v. *Christian,* 249 N. Y. 314, 318.)

In the *Battista* case (*supra,* 249 N. Y. 314), it was the constitutional requirement of indictment by a grand jury in felony cases that we held could not be waived by plea of guilty (cf., also, *People* v. *Miles,* 289 N. Y. 360, 363), but the underlying principle is not limited to rights guaranteed by the constitution. Accordingly, the doctrine of waiver has not barred us from condemning departures from such fundamental statutory rules of procedure as the failure of the trial judge to charge the jury, even in cases tried in a court of special sessions (see *People* v. *Wallens,* 297 N. Y. 57, 62–63), the omission of the prosecuting attorney to make an opening statement to the jury (see *People* v. *Romano,* 279 N. Y. 392, 395; *People* v. *Levine,* 297 N. Y. 144, 147), or the failure of the court to ask the defendant before imposing sentence whether he has any legal cause to show against pronouncement of sentence. (See *People* v. *Craig,* 295 N. Y. 116, 120.)

No less fundamental is the requirement, rooted in tradition and sound public policy, and announced by statute, that prosecution for a crime shall be based on a formal accusation in writing — whether it be indictment or information — designating the crime charged and setting forth the acts alleged to constitute the crime. Compliance with that requirement is essential to the jurisdiction of the court to proceed with the prosecution (see *People* v. *James,* 11 App. Div. 609; *People ex rel. Sampson* v. *Dunning, supra,* 113 App. Div. 35, 40; *Weeks* v. *United States, supra,* 216 F. 292, 293, cert. den. 235 U. S. 697; *Albrecht* v. *United States, supra,* 273 U. S. 1, 8), and '' Consent cannot give a court jurisdiction or authorize a substantial change in its fundamental mode of proceeding.'' (*People ex rel. Battista* v. *Christian, supra,* 249 N. Y. 314, 320.)

Particularly where, as in this case, the conviction rests on a plea of guilt to a charge which, as noted above, fails to state acts sufficient to constitute any crime, the conviction must be condemned as jurisdictionally defective and a nullity notwithstanding the plea. (See *People* v. *Bell,* 31 N. Y. Crim. Rep. 370; *People* v. *Rosenkrantz,* 123 Misc. 335; *People* v. *Lindner,* 133 Misc. 728; *People* v. *Williams,* 135 Misc. 564; *People* v. *Bush,* 140 Misc. 59; *People* v. *Huyck,* 171 Misc. 467; *People* v.

*Patrick,* 175 Misc. 997; *People* v. *Kugelman,* 188 Misc. 135; *People ex rel. Prudhomme* v. *Superintendent of N. Y. State Reformatory for Women,* 21 N. Y. S. 2d 563.) The plea constitutes an admission of guilt only of the acts specified in the charge, and since nowhere in the record is there any specification of acts sufficient to constitute a crime, the plea is obviously without meaning or effect. (Cf., e.g., *People* v. *Kugelman, supra,* 188 Misc. 135, 137; *People ex rel. Prudhomme* v. *Superintendent of N. Y. State Reformatory for Women, supra,* 21 N. Y. S. 2d, 563, 565.)

The mere fact that a plea of guilty has been entered has not barred review in this court of the legal sufficiency of the information, where the information was challenged by motion to dismiss prior to the plea. (See *People* v. *Rudnick,* 280 N. Y. 5; *People* v. *Blue,* 295 N. Y. 620.) While failure to question the information's legal adequacy in the trial court may render it immune from challenge on appeal, where the essential elements of the crime charged have been established by evidence adduced at a trial (cf. *People* v. *Wiechers,* 179 N. Y. 459; *People* v. *Willett,* 213 N. Y. 368, 375), that omission cannot, without doing violence to fundamental principles of justice, be given the effect of validating a conviction which rests *solely on a plea of guilt to a nonexistent or insufficient information.* (See *People* v. *Bell, supra,* 31 N. Y. Crim. Rep. 370, 375.)

Termination of a criminal "trial" by a plea of guilty, following quickly upon self-accusation, may save time and may even avoid delaying formalities, but surely those considerations cannot justify the by-passing of essential guarantees and safeguards with which the centuries have surrounded those accused of crime. Not with mere technicality or form are we here concerned, but rather with a "fundamental * * * principle of justice and fair dealing"; as this court wrote in the *Zambounis* case (*supra,* 251 N. Y. 94, 97): "Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos. Much impatience is being shown with the technicalities of the law, and at times it is justified. The requirement that an indictment and an information must state the crime with which a defendant is charged, and the particular acts constituting that crime is more than a

technicality; it is a fundamental, a basic principle of justice and fair dealing, as well as a rule of law.''

The judgment should be reversed and the charge dismissed.

LOUGHRAN, Ch. J., and DYE, J., concur with CONWAY, J.; DESMOND, J., concurs with CONWAY, J., in separate opinion; FULD, J., dissents in opinion in which LEWIS and FROESSEL, JJ., concur.

Judgment affirmed.

